IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON MCGREW, individually,                    No. 3:23-cv-01082-HZ

                 Plaintiff,                    OPINION & ORDER

     v.

CITY OF PORTLAND, MULTNOMAH
COUNTY, NOAH HARDING, in his
individual capacity, JONATHAN IANOS,
in his individual capacity, CHERYL
NELSON, in her individual capacity,
JOCELYN K. JOHNSON, in her
individual capacity,

               Defendants.


Louren Oliveros
Oliveros Law, PLLC
50 Charles Lindbergh Blvd, Suite 205
Uniondale, NY 11553

       Attorney for Plaintiff

Veronica R. Rodriguez
Assistant County Attorney
Multnomah County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214

       Attorneys for Defendants Multnomah County, Jocelyn Johnson, and Cheryl Nelson

HERNÁNDEZ, District Judge:

This matter comes before the Court on Multnomah County Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, ECF 31. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion.

## BACKGROUND

The following facts are taken from the First Amended Complaint ("FAC") and the parties' materials regarding the Motion to Dismiss.

On January 8, 2021, Plaintiff Jason McGrew was placed on probation in Geary County, Kansas "pursuant to a plea agreement related to marijuana." FAC ¶ 18. At some point Plaintiff's probation was transferred to Oregon and supervised by Multnomah County probation officers Jocelyn Johnson and Cheryl Nelson.

"At all material times Plaintiff was in a relationship with . . . Hanna Hinkle." FAC ¶ 20. On August 7, 2021, Plaintiff was at Hinkle's apartment where he had an encounter with Portland Police Officers Ianos and Harding and was arrested on charges of interference with a peace officer, resisting arrest, coercion-domestic violence, and criminal mischief. Plaintiff "was booked into the Multnomah County jail," held for four days, and released on August 11, 2021. FAC ¶ 43-44.

Plaintiff alleges that on August 22, 2021, Johnson and Nelson modified the terms of Plaintiff's probation to include a term that Plaintiff have "no offensive contact" with Hinkle. FAC ¶ 54.

On September 24, 2021, Plaintiff sent a tort claim notice to the City of Portland regarding his interactions with officers Ianos and Harding. On September 30, 2021, Johnson imposed a probation condition that Plaintiff "have no contact with Hinkle." FAC ¶ 59. Plaintiff alleges that

Johnson and Nelson submitted a Compact Violation Report to Kansas in which they reported "that Plaintiff violated conditions of his probation," but "Plaintiff did not violate a condition of his probation. Rather, [they] imposed a new condition of release unrelated to Plaintiff's conviction and . . . found that Plaintiff violated that unlawful condition of release[1] and prepared the report to revoke Plaintiff's probation." FAC ¶ 59. Plaintiff alleges Johnson and Nelson recommended "retaking by Kansas based on their unilateral finding of Plaintiff's probation violation." FAC ¶ 60.

On October 6, 2021, Kansas received the Compact Violation Report and "decided to retake Plaintiff." On that same day Johnson told Plaintiff that he was no longer being supervised in Oregon and he was required to report to Kansas by October 15, 2021. Plaintiff did not report to Kansas by October 15, 2021, and on November 4, 2021, Kansas issued an arrest warrant for Plaintiff.

Ultimately, Plaintiff was arrested on October 5, 2022, and "confined on that arrest warrant" until his release on October 18, 2022.

On July 17, 2023, Plaintiff filed a complaint in Multnomah County Circuit Court against the City of Portland, Officers Harding and Ianos, the Interstate Commission for Adult Offender Supervision ("ICAOS"), Colette Peters, Nelson, and Johnson asserting claims for unconstitutional seizure, excessive force, and wrongful arrest against Harding and Ianos; negligence, assault, and battery against Ianos, Harding, and the City of Portland; unconstitutional

---

[1] It is unclear whether Plaintiff alleges Johnson and Nelson reported that Plaintiff violated the condition allegedly added on August 22, 2021, or the condition allegedly added on September 30, 2021. It is not entirely clear, but it appears that Plaintiff alleges Johnson and Nelson based the Compact Violation Report on Plaintiff's on August 7, 2021 contact with Hinkle.

seizure and malicious prosecution against Peters, Nelson, and Johnson; and violation of the due process clause of the Fourteenth Amendment against Peters, Nelson, and Johnson.

On October 2, 2023, Plaintiff filed a First Amendment Complaint in which he no longer named Peters or the ICAOS as defendants and asserted claims for unconstitutional seizure, excessive force, and wrongful arrest against Harding and Ianos; negligence, assault, battery, and false arrest against the City of Portland; intentional infliction of emotional distress ("IIED") against Multnomah County; unconstitutional seizure and malicious prosecution against Nelson and Johnson; and violation of the due process clauses of the Fifth and Fourteenth Amendments against Nelson and Johnson.

On October 16, 2023, Defendants Multnomah County, Johnson, and Nelson filed a Motion to Dismiss Plaintiff's claims against them. The Court took this matter under advisement on November 29, 2023.

## STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "When reviewing a dismissal pursuant to Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes them "in the light most favorable to plaintiff." *Pino v. Cardone Cap., LLC,* 55 F.4th 1253, 1257 (9th Cir. 2022)(quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "'Threadbare recitals of the elements of a cause of action" do not suffice to state a claim." *Pino*, 55 F.4th at 1257 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Multnomah County Defendants move to dismiss Plaintiff's claims against Nelson on the basis that Nelson did not have any involvement in Plaintiff's supervision after August 10, 2021; and to dismiss Plaintiff's claims for IIED, unconstitutional seizure/malicious prosecution, and violation of due process on the basis of failure to state a claim.

## I.    Judicial Notice

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co*., 443 F.3d 676 (9th Cir. 2006)).

### A.    Undisputed Documents

Defendants include with their Motion to Dismiss a request that the Court take judicial notice of the Interstate Compact; the "Register of Actions" in *State of Oregon v. Jason*

*Alan McGrew* (the "criminal matter"); "Register of Actions" in *State of Oregon v. Jason Alan McGrew* (the extradition matter); and the judicial notice of rules, advisory opinions, and bench book related to the Compact because the facts in these documents are "not subject to reasonable dispute," the FAC necessarily relies on these documents and/or the contents of the documents are alleged in the FAC, the documents' authenticity are not in question, and there are no disputed issues as to the documents' relevance. Plaintiff does not object to Defendants' request that the Court take judicial notice of these documents.

Courts may take judicial notice of information "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010)(The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."). *See also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003)(quoting Fed. R. Evid. Rule 201(b)(2) ("Facts are indisputable, and thus subject to judicial notice, only if they are . . . 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'")).

The Court grants Defendants' request to take judicial notice of the Compact; both registers of action; and the rules, advisory opinions, and bench book related to the Compact.

**B.    Disputed Document**

Defendants also ask the Court to take judicial notice of and incorporate by reference Plaintiff's conditions of probation issued by the District Court of Geary County, Kansas. Plaintiff objects to Defendants' request on the bases that this document is unauthenticated and its authenticity is not unquestioned.

"A party authenticates 'an item of evidence' by laying a foundation with other 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Nyerges v. Pac. Sunwear of Cal., LLC*, No. SACV2101123CJCDFMX, 2023 WL 3565008, at *2 (C.D. Cal. Apr. 20, 2023)(quoting Fed. R. Evid. 901(a)). "'A document can be authenticated [under Rule 901(b)(1)]' of the Federal Rules of Evidence 'by a witness who wrote it, signed it, used it, or saw others do so,' though 'a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902.'" *Id.* (quoting *Orr v. Bank of Am.*, 285 F.3d 764, 774 & n.8 (2002)).

The document at issue was submitted by Defendants via the Declaration of attorney Veronica Rodriguez, who states in her Declaration that Exhibit 1 to her Declaration is a "true and accurate copy of the State of Kansas, District of Geary County, Kansas, Eighth Judicial District Court - Conditions of Probation." Rodriguez Decl. ¶ 3. Defendants state in their Reply that they provided Plaintiff with a copy of the document at issue on September 22, 2023 and "at no time before filing his response . . . did Plaintiff confer with . . . Defendants regarding the authenticity of the document." Def. Reply at 4. Defendants, however, do not assert that Rodriguez has personal knowledge of Plaintiff's Kansas conditions of probation nor do Defendants assert the document is authenticated by any manner permitted by Rule 901(b) or 902. The Court, therefore, declines to take judicial notice of Exhibit 1 of Rodriguez's Declaration and

will not consider the conditions of probation set out in that exhibit in its evaluation of
Defendants' Motion to Dismiss.

## II.      Defendant Nelson

Defendants assert Plaintiff's claims against Nelson should be dismissed. Multnomah
County states on the record that Nelson transferred supervision of Plaintiff to Johnson on August
10, 2021, and did not have any involvement in his probation supervision after that date. Nelson
retired from her employment with Multnomah County on August 30, 2021. The Court, therefore,
grants Defendants' Motion to Dismiss as to Plaintiff's claims against Nelson.

## III.     Unconstitutional Seizure/Malicious Prosecution Claims

The Supreme Court has made clear that "that malicious prosecution is actionable under
the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized'
without probable cause." *Thompson v. Clark*, 596 U.S. 36, 42 (2022)(citation omitted). In
addition, a plaintiff "may maintain a malicious prosecution claim not only against prosecutors
but also against others - including police officers and investigators - who wrongfully caused his
prosecution." *Smith v. Alma*da, 640 F.3d 931, 938 (9th Cir. 2011)(citing *Galbraith v. Cnty. of
Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

To state a claim of malicious prosecution under § 1983, a plaintiff must plead facts
showing: (1) a state-law malicious prosecution claim; and (2) the defendants intended to deprive
him of a constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004);
*Worley v. Brewer*, Case No. 3:16-cv-02412-BR, 2017 WL 2880401, at *5 (D. Or. July 5, 2017).
In Oregon, the elements of a malicious prosecution claim are: "(1) the institution or continuation
of criminal proceedings, (2) by or at the insistence of the defendant, (3) termination of such

proceedings in the plaintiff's favor,[2] (4) malice, (5) lack of probable cause for the proceedings, and (6) injury or damages as a result." *Worley*, 2017 WL 2880401, at *5. *See also Singh v. McLaughlin*, 255 Or. App. 340, 352 (2013)(stating elements of malicious prosecution under Oregon law).

In his seventh claim Plaintiff alleges Johnson violated his rights under the Fourth Amendment to be free of unconstitutional seizure and malicious prosecution when she:

> [I]ntentionally communicated inaccurate and misleading information to Kansas probation placing Plaintiff in a false light. . . . [I]nitiated and facilitated proceedings to revoke Plaintiff's probation with an intent to deprive Plaintiff of his constitutional protections, including the right to be fully and formally advised of the charges against him, his constitutional right to a hearing near the location of the probation violation allegations so that he could confront witnesses, present evidence and a defense, and his right to have the conditions of his probation relate to his original criminal conviction [and] commenced proceedings against Plaintiff for his probation violation.

FAC ¶¶ 112-14. Plaintiff also alleges Johnson "had no probable cause to prosecute the action" and her "actions and omissions were conducted with malice." FAC ¶¶ 116-17.

Defendants move to dismiss this claim for failure to state a claim. Defendants assert they reported violations of Plaintiff's probation to Kansas as required under ICAOS Rule 4.106[3] and 4.109[4] and had probable cause to do so. Specifically, Defendants note Plaintiff was arrested on

---

[2] In *Thompson* the Supreme Court made clear that § 1983 claims for malicious prosecution do not require that the plaintiff show innocence; "[a] plaintiff need only show that the criminal prosecution ended without a conviction." 596 U.S. at 42.

[3] This provides: "A receiving state may initiate a progress report to document offender compliant or noncompliant behavior that does not require retaking as well as incentives, corrective actions or graduated responses imposed. The receiving state shall provide: date(s), description(s) and documentation regarding the use of incentives, corrective actions, including graduated responses or other supervision techniques to address the behavior in the receiving state, and the offender's response to such actions." Rodriguez Decl., Ex. 4 at 51.

[4] This section provides in relevant part: "A receiving state shall notify a sending state of an act or pattern of behavior requiring retaking within 30 calendar days of discovery or determination by submitting a violation report." Rodriguez Decl., Ex. 4 at 54.

August 7, 2021, on charges of interference with a peace officer, resisting arrest, coercion, and criminal mischief, and, therefore, Plaintiff failed "to not engage in violent or threatening behavior." Def.'s Mot. at 9. Plaintiff, however, alleges in his FAC that Johnson submitted the report to Kansas "falsely alleging that Plaintiff violated conditions of his probation." Specifically, Plaintiff alleges Johnson "imposed a new condition of release unrelated to Plaintiff's conviction and then also unilaterally, without judicial oversight, found that Plaintiff violated that unlawful condition of release." *Id.* It is unclear whether the behavior Johnson reported to Kansas was Plaintiff's arrest on August 7, 2021, or that he had contact with Hinkle at that time or at some other point.[5] The Court, however, has declined to take judicial notice of the Kansas terms of Plaintiff's probation because that document was not properly authenticated nor is there any other admissible evidence in the record of those conditions. Defendants, therefore, have not established that the August 7, 2021, arrest violated the terms of Plaintiff's probation.

Defendants, however, also note Plaintiff fails to allege that his probation violation case terminated in his favor. Plaintiff concedes that he failed to include this allegation and requests permission to amend his FAC to include that allegation.

Because Plaintiff fails to allege the probation violation matter terminated in his favor and the Court cannot draw a reasonable inference on this record that the probation violation matter terminated in Plaintiff's favor, the Court concludes Plaintiff has not stated a claim for malicious prosecution/unlawful seizure. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's seventh claim for unconstitutional seizure/malicious prosecution.

---

[5] Defendants did not submit a copy of the report or a Declaration by Johnson indicating what was reported.

**IV.    Due Process Claim**

In his eighth claim Plaintiff alleges Johnson violated his right to due process under the Fifth and Fourteenth Amendments. Plaintiff alleges Johnson deprived him of his liberty interest in "fundamentally fair probation proceedings" when she sought to have Kansas retake his probation "without a notice of the formal charges, without conducting a probable cause hearing on the violation in the State of Oregon, and without giving Plaintiff the opportunity for Plaintiff to obtain counsel and present evidence." FAC ¶ 122.

Defendants move to dismiss this claim on the grounds that Plaintiff did not have a due process right to a hearing in Oregon as to his retaking. Defendants note Oregon recognizes that under the Compact "there is no right of any offender to live in another state and that duly accredited officers of a sending state may . . . retake any offender under supervision, subject to the provisions of [the] compact and the bylaws and rules promulgated under [the] compact." Or. Rev. Stat. § 144.600(d). Oregon Administrative Rule 291-180-0252 provides that the Oregon Department of Corrections ("ODOC") "adopts . . . [the] standards for the interstate transfer of adult offender supervision set out in the official ICAOS rules." Defendants concede ICAOS Rule 5.108(a) provides: "An offender subject to retaking that may result in a revocation shall be afforded the opportunity for a probable cause hearing before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred." Defendants, however, note that Rule 5.108 does not set out the nature of the hearing. Defendants point out that ICAOS Advisory Opinion 2-2005 noted the "understanding of due process and implied rights" found in the context of probation revocation "may not be appropriate or necessary in" the context of a "retaking (as distinguished from revocation)." Rodriguez Decl. Ex. 6 at 1. The advisory opinion notes "[s]everal courts have . . . addressed the nature of the retaking hearing."

*Id.* For example, the advisory opinion notes that in *Ogden v. Klundt*, 550 P.2d 36, 39 (Wash. Ct. App. 1976), the court held that the "scope of review in the receiving state in a retaking proceeding was limited to a determination of: (1) the scope of the authority of the demanding officers, and (2) the identity of the person to be retaken." *Id.* The advisory opinion stated that many courts have held that "[a]llegations of due process violations in the actual revocation of probation or parole are matters properly addressed during proceedings in the sending states after the offender's return." *Id.* (citing *People ex rel. Crawford v. State*, 329 N.Y.S.2d 739 (N.Y. 1972); *State ex rel. Nagy v. Alvis*, 90 N.E.2d 582 (Ohio 1950); *State ex rel. Reddin v. Meekma*, 306 N.W.2d 664 (Wis. 1981); *Bills v. Shulsen*, 700 P.2d 317 (Utah 1985)). Defendants note the advisory opinion explains:

> an offender subject to retaking generally does not enjoy the same due process rights in the asylum state as those enjoyed in the sending state during the actual revocation proceedings. . . . [T]he level of due process to which the offender is entitled may be less in the retaking context than in the actual revocation process. Offenders subject to revocation have a right to not to have their probation or parole arbitrarily revoked. Offenders subject to retaking enjoy Compact transfers purely as an exercise of discretion by the sending state; that is, there is minimal liberty interest involved because there is no "right" to transfer that creates a recognized liberty interest and there is no immediate danger of the offender's liberty interests will be irrevocably affected.

*Id.* at 2.

As Plaintiff, notes, however, the advisory opinion also states courts have held "an offender subject to retaking may be entitled to a more robust due process hearing . . . [when] there is a great geographical difference between the sending and receiving states, for example the distance between California and New Jersey. *Id.* at 1 (citing *Cal. v. Crump*, 433 A.2d 791 (N.J. Super. Ct. App. Div. 1981)). This comports with the statement in Rule 5.108 that "[]n offender subject to retaking that may result in a revocation shall be afforded the opportunity for a probable

cause hearing before a neutral and detached hearing officer *in or reasonably near the place where the alleged violation occurred.*" Emphasis added. The distance between Portland, Oregon and Geary County, Kansas is approximately 1,700 miles, which likely qualifies as "a great geographical distance," and, in any event, Kansas is not "in or reasonably near" Portland, "where the alleged violation occurred." The circumstances here, therefore, may be those in which due process required a hearing in Oregon as to retaking.

In addition, although ICAOS Advisory Opinion 2-2005 notes "the level of due process to which the offender is entitled may be less in the retaking context than in the actual revocation process," Plaintiff alleges in his FAC that Defendants did not engage in even minimal due process before beginning the retaking process. Taking the allegations in the FAC as true the Court concludes Plaintiff has stated a claim for violation of due process. Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiff's due process claim.

## IV.    IIED Claim

Plaintiff alleges Johnson intended to inflict severe emotional distress "upon Plaintiff by imposing conditions of probation beyond his original conditions, by violating Plaintiff's newly imposed condition of release without a hearing, and by initiating his revocation in the State of Kansas." FAC ¶ 106. Plaintiff alleges Johnson modified the terms of Plaintiff's probation to include conditions without a hearing or notice to Plaintiff. Plaintiff also alleges that when Johnson was advised that Plaintiff had filed a tort claim notice, Johnson "pressured Plaintiff to drop the charges against Officer Ianos." FAC ¶ 56. When Plaintiff refused to drop the matter, Johnson "immediately retaliated against Plaintiff by initiating probation revocation proceedings." FAC ¶ 57. Defendants move to dismiss on the basis that Plaintiff fails to allege facts that establish Johnson's conduct was sufficiently outrageous to support a claim for IIED.

To state a claim for IIED, a plaintiff must allege the defendants intended to inflict severe emotional distress, the defendants' acts were the cause of the plaintiff's severe emotional distress, and the defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Babick v. Or. Arena Corp.,* 333 Or. 401, 411 (2002). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.,* 170 Or. App. 164, 171 (2000). "Conduct that is rude, boorish, tyrannical, churlish and mean" does not support liability for IIED. *Schoen v. Freightliner LLC,* 224 Or. App. 613, 627 (2008)(quotation omitted). "[I]t is the defendant's specific acts, rather than their motives, that must be outrageous." *Cisneros v. City of Klamath Falls,* 604 F. Supp. 3d 1114, 1128 (D. Or. 2022)(citing *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204 (1991), *abrogated on other grounds by McGanty v. Staudenraus,* 321 Or. 532, 543 (1995)).

Defendants assert Johnson's acts of imposing conditions of probation beyond Plaintiff's original conditions and initiating retaking are not sufficiently outrageous because under IACOS Rule 4.103(a) the receiving state may impose a condition on an offender during the term of probation if that condition would have been imposed on an offender sentenced in the receiving state. Rodriguez Decl., Ex. 4 at 47. In addition, Rule 4.101 provides "[a] receiving state shall supervise offenders consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other supervision techniques." Defendant, however, does not produce evidence or authority that indicates similar offenders sentenced in Oregon would have a no contact condition added to their terms of probation under similar circumstances. Moreover, Rule 4.103(b) provides the "receiving state shall notify a sending state that it intends to impose, or has imposed, a condition on the

offender." *Id.* Defendants have produced no evidence that Kansas was advised that Oregon imposed the no-contact condition on Plaintiff.

Even if the alleged violations of the IACOS are insufficiently outrageous to state a claim for IIED, Plaintiff also alleges that when Johnson was advised that Plaintiff had filed a tort claim notice, Johnson "pressured Plaintiff to drop the charges against Officer Ianos." FAC ¶ 56. When Plaintiff refused to drop the matter, Johnson "immediately retaliated against Plaintiff by initiating probation revocation proceedings." Allegations that Johnson initiated probation revocation proceedings in retaliation for Plaintiff's refusal to drop his claim against Officer Ianos are sufficiently outrageous to state a claim for IIED.

Defendants rely on the fact that Plaintiff's probation conditions from Kansas required him to "[o]bey all Federal, State, and Municipal laws" and prohibited him from engaging in "any disorder, fight, assaultive activities, violence, or threats of violence of any nature." The Court, however, has declined to take judicial notice of the terms of Plaintiff's Kansas probation because they are not properly authenticated. Defendants, therefore, have not produced any admissible evidence to support their assertion that Plaintiff's August 7, 2021, arrest for interference with a peace officer, resisting arrest, coercion, and criminal mischief violated the Kansas terms of probation and required Johnson to recommend a retaking of Plaintiff's probation by Kansas.

Taking Plaintiff's allegations as true, the Court finds Plaintiff has pled sufficient facts to state a claim for IIED because Plaintiff alleges Defendants intended to inflict severe emotional distress, Defendants' acts were the cause of Plaintiff's severe emotional distress, and Plaintiff has alleged conduct that is sufficiently outrageous to support a claim for IIED. Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiff's IIED claim.

**CONCLUSION**

The Court grants Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, ECF 31, as to Plaintiff's claims against Defendant Nelson and as to Plaintiff's seventh claim and denies remainder of Defendants' Motion.

The Court grants Plaintiff leave to file a second amended complaint no later than February 20, 2024, only to allege, if possible, that the probation violation matter terminated in Plaintiff's favor.

IT IS SO ORDERED.

DATED: ___January 29, 2024_____.

_____
MARCO A. HERNANDEZ
United States District Judge